# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EAGLE TRUST FUND, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   No. 1:17-cv-2450 (KBJ) |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Over the course of fifty years, conservative political activist Phyllis M. Schlafly created numerous "educational, advocacy, and policy groups," each of which she branded with an "Eagle"-themed name. (Am. Compl., ECF No. 20, ¶¶ 30, 31.) Among those entities are plaintiffs Eagle Trust Fund ("ETF") and Eagle Forum Education & Legal Defense Fund ("EFE-LDF"), as well as non-party Eagle Forum. (*See id.* ¶¶ 2–3, 6, 31.) Each of Schlafly's "Eagle" organizations traditionally received its mail through one central post-office box in Alton, Illinois; significantly, much of this mail was addressed to some variation of "Phyllis Schlafly, Eagle Forum," without regard to the particular "Eagle" entity the correspondence actually concerned. (*See* Postal Service Initial Decision ("Initial Dec."), Ex. A to Defs.' Mot. to Dismiss, ECF No. 17-1, at 4.)[1] This centralized landing spot for the various entities' correspondence changed in 2016, when the organization known as Eagle Forum veered from the flock under new

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

leadership (due to a legal dispute), and submitted a "change of address" form to the

United States Postal Service ("USPS"). (*Id.* at 6.) Plaintiffs ETF and EFE-LDF have

now combined with John Schlafly—Phyllis Schlafly's son, who serves as a trustee or

officer of ETF and EFE-LDF—to file the instant lawsuit against USPS. (*See* Am.

Compl. ¶¶ 2–4.) Plaintiffs claim that ETF's and EFE-LDF's mail matter is being

improperly diverted to Eagle Forum's new address, and they request reversal of an

administrative ruling upholding USPS's decision to honor Eagle Forum's change-of-

address request. (*See id.* ¶ 1.)

Before this Court at present is USPS's motion to dismiss Plaintiffs' first

amended complaint for lack of subject-matter jurisdiction and for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(1) and (6). (*See* Defs.' Mot. to

Dismiss ("Defs.' Mot."), ECF No. 21.) Because Plaintiffs' complaint does not identify

a cause of action and otherwise fails to state a claim for the purpose of Rule 12(b)(6),

as explained below, USPS's motion will be **GRANTED**, and Plaintiffs' action will be

**DISMISSED** without prejudice. A separate Order consistent with this Memorandum

Opinion will follow.

## I.     BACKGROUND[2]

### A.     Basic Facts

Phyllis Schlafly began leasing P.O. Box 618 in Alton, Illinois in 1967, the same

year that she created Eagle Trust Fund. (*See* Initial Dec. at 4.) Most, if not all, of her

Eagle-themed organizations received mail at that P.O. Box for almost fifty years, and as

---

[2] The facts recited herein are drawn from the allegations in Plaintiffs' complaint, as well as from the
written decisions in the underlying administrative proceedings, which the complaint incorporates by
reference. *See R.J. Reynolds Tobacco Co. v. USDA*, 130 F. Supp. 3d 356, 369–70 (D.D.C. 2015).

mentioned above, said correspondence was typically addressed to some variation of "Phyllis Schlafly, Eagle Forum[.]" (*Id.*) This centralization of the different organizations' mail matter was not inherently problematic because "[a]ll of Mrs. Schlafly's Eagle entities functioned in consonance" (Am. Compl. ¶ 32), and Eagle Trust Fund provided "back-office management, bookkeeping, and mail services for the other organizations" (Initial Dec. at 5). Thus, Eagle Trust Fund employees sorted and distributed the mail that was delivered to P.O. Box 618 (and a related street address) for all of the "Eagle" entities, including Eagle Forum. (*See* Am. Compl. ¶¶ 32, 38.)

In 2016, members of the organization known as Eagle Forum clashed with Phyllis Schlafly, "based in part on their holding political and social positions dissonant with Mrs. Schlafly and the other Eagle entities." (*Id.* ¶ 33.) According to the amended complaint, six Eagle Forum directors "secretly agreed among themselves to try to take control" of Eagle Forum and "to remove Phyllis Schlafly and John Schlafly from their longstanding authority over [Eagle Forum's] accounts and assets." (*Id.* ¶¶ 33, 34.) As a result, Mrs. Schlafly "formally and expressly revok[ed] any and all existing licenses that [Eagle Forum] held to use her name, image, and likeness, as well as any intellectual property under her control." (*Id.* ¶ 36.) Ultimately, an Illinois state court designated new, acting leadership for the Eagle Forum organization. (*See id.* ¶ 37; Initial Dec. at 5–6.)

Soon thereafter, Eagle Forum's new leadership filed a change-of-address request form with USPS, thereby asking that any and all mail that was addressed to "Eagle Forum" at P.O. Box 618 and the related street address be forwarded to Eagle Forum's new place of business. (*See* Am. Compl. ¶ 38; Initial Dec. at 6.) As a trustee of ETF

and an officer and director of EFE-LDF (*see* Am. Compl. ¶ 4), John Schlafly opposed Eagle Forum's change-of-address request, leading to the administrative proceedings that underlie the instant mail dispute. (*See* Initial Dec. at 6); *see also* 39 C.F.R. Part 965 (governing "Proceedings Relative to Mail Disputes").

On September 15, 2017, an Administrative Judge issued USPS's Initial Decision regarding the mail-matter conflict. (*See* Initial Dec. at 3); *see also* 39 C.F.R. § 965.11. The Administrative Judge addressed the question of "how mail addressed to Eagle Forum at P.O. Box 618 and 322 State Street should be delivered" (Initial Dec. at 6), and eventually concluded that "Eagle Forum—and not Eagle Trust [Fund] or Eagle Forum Education and Legal Defense Fund—should control delivery of mail addressed to Eagle Forum" (*id.* at 8).[3]  In so finding, the Administrative Judge analyzed

> two key concepts . . . .  First, as it applies to all mail disputes, the sender's intent is paramount.  Second, when a mail dispute concerns how mail to an organization should be delivered, the mail must be delivered under the order of the organization's president or equivalent official.

(*Id.* at 7 (internal citations omitted).)

As to the question of the sender's intent, the Administrative Judge found that "[t]he parties agree that [the disputed] mail addressed to Eagle Forum can actually be intended for any of Mrs. Schlafly's organizations, including Eagle Trust [Fund], Eagle Forum, and Eagle Forum Education and Legal Defense Fund[.]"  (*Id.*)  "Because of th[e] complex organizational web [of Eagle-themed organizations receiving mail at the same address], the sender's intent for items addressed to Eagle Forum is difficult, if not

---

[3] The Administrative Judge declined to resolve the question of "who has the right to access and control P.O. Box 618," because he determined that he had "no authority to decide who owns or controls" a P.O. Box.  (See Initial Dec. at 6.)

impossible, to determine." (*Id.* at 7–8.) Thus, the Administrative Judge concluded that it "becomes necessary to look elsewhere for the evidence necessary to decide how the mail should be delivered." (*Id.* at 8.)

Turning to the second component of his inquiry, the Administrative Judge found that "there is no dispute that Eunie Smith is currently the acting president of Eagle Forum, entitling her to direct delivery of mail addressed to Eagle Forum." (*Id.*) Although John Schlafly had argued that "Eagle Forum really means Eagle Trust [Fund] or Eagle Forum Education and Legal Defense Fund[,]" and that "the term Eagle Forum encompasses the entire Schlafly network, all of which falls under Eagle Trust [Fund,]" the Administrative Judge concluded that "[t]hese arguments fail because the Domestic Mail Manual, which sets out the procedures for mail delivery by the Postal Service, provides that an addressee controls the delivery of its mail, and that in the absence of a contrary order the mail is delivered as addressed." (*Id.* (emphasis omitted) (citation omitted).) "To allow either [ETF or EFE-LDF] to control delivery of mail addressed to Eagle Forum would conflict with the plain meaning" of USPS regulations. (*Id.* at 8–9); *see also* 39 C.F.R. § 211.2(a)(2) (establishing that "[t]he regulations of the Postal Service consist of[,]" among other things, "[t]he Mailing Standards of the United States Postal Service, Domestic Mail Manual"). The Administrative Judge therefore determined that "all mail being held, or hereafter received, addressed to Eagle Forum at both P.O. Box 618, Alton, Illinois, and 322 State Street, Suite 301, Alton, Illinois, [should] be delivered as directed by Eunie Smith, the acting president of Eagle Forum." (Initial Dec. at 9.)

John Schlafly appealed the Administrative Judge's decision, *see* 39 C.F.R.

§ 965.12, and a Judicial Officer ("JO") affirmed. (*See* Postal Service Decision ("Dec. on Appeal"), Ex. B. to Defs.' Mot. to Dismiss, ECF No. 17-2, at 5 (concluding that, "[a]s the only mail here in dispute is that directed to Eagle Forum (or Eagle Forum, Attention: Phyllis Schlafly), and Eagle Forum has moved, it remains entitled to redirect such mail to its present address").) John Schlafly argued "that the addressee in question—Eagle Forum—'may not file a change-of-address order' under [section 507.2.1.5 of the Domestic Mail Manual] because the disputed mail was 'originally addressed to the addressee *at* an organization, business, place of employment, or other affiliation'" (*id.* at 4 (emphasis added))[4]; however, the JO reasoned that

> [b]y its own terms, the word 'addressee' in [section] 507.2.1.5 means 'an individual or a business entity,' not a combination of an individual or business entity to whom the mail piece is directed *and* the address to which it is directed. Indeed, [section] 507.2.1.5 deals with a situation in which mail is sent to 'an organization, business, place of employment, or other affiliation' at which the individual or business entity to whom it is directed (the addressee) no longer conducts business or is employed. That is why the second sentence of [the provision] then allows the organization or business entity currently located at the physical address written on the piece of mail to 'change the address (but not the addressee's name)' on that mail to allow it to be redirected to the addressee (that is, to the individual or business entity whose name appears on that piece of mail but who no longer is located at that physical address).

(*Id.* (emphasis in original).)

The JO continued: "[h]ere, the mail in dispute is being sent to Eagle Forum at a physical address (P.O. Box 618 and 322 State Street), not to Eagle Forum *at* Eagle

---

[4] Section 507.2.1.5 states in relevant part "A change-of-address order cannot be filed or is restricted for the following: . . . An addressee (e.g., an individual or a business entity or other organization) may not file a change-of-address order for mail originally addressed to the addressee at an organization, business, place of employment, or other affiliation. The organization or business may change the address (but not the addressee's name) on a mailpiece to redirect it to the addressee." Domestic Mail Manual § 507.2.1.5, https://pe.usps.com/cpim/ftp/manuals/dmm300/507.pdf.

Trust Fund or another of the many organizations and business entities also located at that physical address." (*Id.* (emphasis in original).) Thus, the JO determined that the Domestic Mail Manual provision that Schlafly sought to use to reverse the Administrative Judge's underlying decision "does not apply and does not prohibit the change of address sought by Eagle Forum." (*Id.*; *see also id.* at 5 (clarifying that "[u]nless the face of a piece of disputed mail indicates that it is directed to Eagle Forum *and* to another business entity, for purposes of these mail delivery regulations, only one addressee is involved" (emphasis in original)).) In short, the JO determined that, "if the words on a piece of mail identify only Eagle Forum, Eagle Forum is the addressee which is allowed to control delivery of that mail." (*Id.*) Consequently, the JO denied Schlafly's appeal, and the JO's "final order [became] the final agency decision[.]" 39 C.F.R. § 965.12.

### B.  Procedural History

Seeking to reverse the JO's decision upholding USPS's mail-routing determination, Plaintiffs filed a complaint with this Court on November 13, 2017. (*See* Compl., ECF No. 1, ¶ 1.)[5] Plaintiffs subsequently filed a four-count amended complaint, in which they claim (1) that USPS failed to use "reasoned decisionmaking" when resolving the underlying mail dispute (*see* Am. Compl. ¶¶ 52–57, 58–60 (Counts I and II)); (2) that USPS failed to follow its own regulations (*see id.* ¶¶ 61–67 (Count III)); and (3) that USPS violated Plaintiffs' constitutional right to due process (*see id.*

---

[5] In addition to USPS and Postmaster General Megan J. Brennan (collectively, "Defendants" or "USPS"), the original complaint also named Eagle Forum as a defendant. (*See* Compl. at 1.) Eagle Forum filed a motion to dismiss on the ground that venue was improper (*see* Mot. to Dismiss or Transfer Venue, ECF No. 10), and USPS filed a separate motion to dismiss (*see* Defs.' Mot. to Dismiss, ECF No. 17). The Court issued an order dismissing Eagle Forum from the action and allowing Plaintiffs to amend their complaint. (*See* Order, ECF No. 19, at 2–3.) It subsequently denied USPS's motion to dismiss as moot. (*See* Min. Order of Feb. 7, 2018.)

¶¶ 68–71 (Count IV)) by "failing to provide for reconsideration, based on after-arising grounds or evidence" (*id.* ¶ 69). The instant pending motion is USPS's motion to dismiss Plaintiffs' amended complaint. (*See* Defs.' Mot.).

USPS's motion makes several arguments. First, USPS maintains that this Court lacks subject matter jurisdiction over Plaintiffs' claims. (*See* Defs.' Mot. at 12–21); *see also* Fed. R. Civ. P. 12(b)(1). Next, USPS asserts that Plaintiffs' amended complaint fails to state a claim within the meaning of Federal Rule of Civil Procedure 12(b)(6), because it does not identify a source of law that authorizes this Court to grant the relief Plaintiffs request. (*See id.* at 22–25); *see also* Fed. R. Civ. P. 12(b)(6). Finally, USPS contends that Plaintiffs' complaint lacks sufficient facts to support a plausible claim that the agency violated the Constitution's guarantee of due process, as Plaintiffs have neither "identif[ied] a protected property or liberty interest under the Fifth Amendment[,]" nor "show[n] that [USPS's] procedures for resolving mail disputes violate[] the Fifth Amendment's guarantee of due process." (Defs.' Mot. at 12.)

Plaintiffs oppose USPS's dismissal motion on several fronts. They argue, first, that the APA authorizes review of USPS mail disputes. (*See* Pls.' Mem. in Supp. of Opp'n to Fed. Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 22-2, at 21; *but see* Am. Compl. ¶ 17 (appearing to acknowledge that that "Congress has exempted [USPS] from the [APA]").) Plaintiffs further argue that the Court is authorized to engage in non-statutory ("*ultra vires*") review of USPS's actions (*see* Pls.' Opp'n at 22), and that the Due Process Clause requires the agency to provide aggrieved parties with the ability to seek reconsideration of USPS decisions based on after-arising grounds or evidence (*see id.* at 37–38).

For the reasons explained below, this Court concludes that, while Defendants' jurisdictional argument is misguided, Plaintiffs' amended complaint does not state a claim upon which relief can be granted because it fails to identify a cause of action that would permit the Court to grant the requested relief. Furthermore, the complaint's allegations of fact, even if true, do not support a plausible claim that USPS violated Plaintiffs' procedural due process rights. Therefore, Defendants' motion must be granted, and Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6).

## II.     APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a party to move to dismiss a complaint on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive such a motion, the complaint "must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Significantly for present purposes, a plaintiff who fails to show that the law authorizes him to bring his lawsuit fails to state a claim upon which relief can be granted. *See Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978) (explaining that where a complaint does not "sufficiently establish[] a federal cause of action[,]" the "correct motion for dismissal" is that "made pursuant to Rule 12(b)(6)"); *Blake v. FBI*, 298 F. Supp. 3d 77, 78 (D.D.C. 2018) ("The existence of a private right of action under federal law goes to whether the plaintiff has stated a claim on which relief can be granted."). In other words, to plead a viable claim, a plaintiff must point to a federal statute or other basis of authority that allows him to seek the relief he requests. *See, e.g.*, *El Paso Natural Gas Co. v. United States*,

750 F.3d 863, 887–88 (D.C. Cir. 2014) (affirming district court's dismissal on alternative ground that claim failed to identify cause of action and thus had to be dismissed pursuant to Rule 12(b)(6)); *Citizens for Responsibility and Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 133 (D.D.C. 2018) (dismissing claims pursuant to Rule 12(b)(6) where plaintiffs "lack[ed] a cause of action for its first three counts").  Moreover, it is axiomatic that "[t]o state a claim for the denial of procedural due process, a plaintiff must allege that the government deprived her of a '"liberty or property interest" to which she had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient."'" *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 28 (D.D.C. 2014) (quoting *Roberts v. United States*, 741 F.3d 152, 161 (D.C.Cir.2014)) (second alteration in original); *see also id.* at 31–32 (assuming that plaintiff alleged deprivation of protected interest but dismissing complaint because it failed to allege that the attendant procedures were inadequate); *Brown v. McHugh*, 972 F. Supp. 58, 67 (D.D.C. 2013) (concluding that plaintiff failed to identify a protected liberty or property interest and dismissing case).

A court evaluating a Rule 12(b)(6) motion to dismiss "generally does not consider matters beyond the pleadings[,]" but the court "may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *R.J. Reynolds Tobacco Co. v. U.S.D.A.*, 130 F. Supp. 3d 356, 369–70 (D.D.C. 2015) (internal quotation marks, citations, and alteration omitted).  "The

[C]ourt must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013). "Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.   ANALYSIS

USPS has requested dismissal of the first three counts of Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and also under Rule 12(b)(6), for failure to state a claim. (*See* Defs.' Mot. at 1.)  Notably, the crux of USPS's argument with respect to both contentions relies on the same purported defect in Plaintiffs' complaint: that Plaintiffs have failed to identify a source of law authorizing the Court to review the underlying USPS decision and grant Plaintiffs' requested relief. (*Compare* Defs.' Mot. at 12 ("[USPS's] decision is not reviewable under the APA or 'non-statutory' agency review.  Therefore, this Court lacks subject matter jurisdiction to decide such claims.") *with id.* ("[S]uch Counts must also be dismissed for failure to state a claim under Rule 12(b)(6) because no cause of action exists to review [USPS's] decision.").)  As USPS acknowledges (*see* Defs.' Mot. at 22 n.10), no less an authority than the Supreme Court has determined that whether or not a complaint identifies a cause of action pursuant to which a plaintiff can seek relief is not a question of whether the court has *jurisdiction* to hear the case. *See Air Courier Conf. of America v. American Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3

(1991); *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."). As such, the Court will treat USPS's motion exclusively as a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

This motion must be granted for the reasons laid out below. In short, Plaintiffs' amended complaint does not identify a cause of action either for its claim that USPS failed to engage in reasoned decision making when resolving the change-of-address dispute (Counts I and II), or for its contention that the agency failed to follow its own regulations (Count III). Moreover, the amended complaint fails to allege any facts that, if true, would give rise to a reasonable inference that USPS violated Plaintiffs' constitutional right to due process (Count IV).

**A.  Plaintiffs Have Not Identified A Cause Of Action Under Existing Law**

      1.  <u>There Is No APA Review Of USPS Decisions</u>

Ordinarily, when no other adequate legal remedy exists, the APA authorizes the claims against an agency in federal court. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *see also Allentown Mack Sales and Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("The [APA], which governs the proceedings of administrative agencies and related judicial review, establishes a scheme of 'reasoned decisionmaking.'" (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983))). However, Congress has expressly *exempted* USPS actions from review under the APA, with limited exceptions. *See* 39 U.S.C. § 410(a) (stating that, with certain exceptions, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds,

including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service"); *see also Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 305 (D.C. Cir. 2014) ("[T]he Postal Service is exempt from review under the [APA]." (internal quotation marks and citations omitted)). The D.C. Circuit has established that "non-statutory" review may be available "for certain Postal Service decisions, notwithstanding the preclusion of APA review under 39 U.S.C. § 410(a)." *Mittleman*, 757 F.3d at 307. But that review is limited: "It is available only to determine whether the agency has acted *ultra vires*—that is, whether it has exceeded its statutory authority." *Id.* (internal quotation marks and citations omitted).

This all means that the claims in Plaintiffs' amended complaint that request that USPS's decision be reversed by this Court because USPS failed to engage in "reasoned decisionmaking" concerning the change-of-address dispute and thus that the agency's decision should be reversed by this Court (*see, e.g.,* Am. Compl. ¶ 57) seek relief that is not authorized by law. To be sure, Plaintiffs have taken care not to *cite* the APA specifically in the text of their amended complaint, but their core contention that "USPS's administrative order fails to meet the standard for reasoned decisionmaking and is arbitrary, capricious, an abuse of discretion[ and] not otherwise in accordance with the law" (*Id.* ¶¶ 57, 60) is unmistakably rooted in the APA's primary provisions (*see* 5 U.S.C. § 706(2)), such that Counts I and II unquestionably rely upon the unavailable cause of action that the APA establishes. *Cf. Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 277 (D.D.C. 2006) ("The Court is 'not bound by plaintiff's characterization of the action,' and may examine whether plaintiff is actually pleading a [different] claim." (quoting *Maddox v. Bano*, 422 A.2d 763, 765 (D.C. 1980)).

Plaintiffs have no good answer to the charge that they are seeking to invoke a cause of action that Congress has specifically removed from the arsenal available to plaintiffs who are aggrieved by USPS determinations. (*See* Defs.' Mot. at 13.) Instead, despite section 410(a), Plaintiffs breezily maintain "that APA review [still] applies," that "USPS's partial APA exemption does not preclude traditional forms of *pre-APA* equitable review," and that "judicial review would exist here even if Congress had intended § 410(a) to preclude judicial review." (Pls.' Opp'n at 20 (emphasis in original).)

None of these contentions is persuasive. First of all, the suggestion that the express statutory exemption in section 410(a) of Title 39 of the United States Code is too narrow to pertain to claims arising in the context of the instant mail dispute (*see id.* at 21) fails because the D.C. Circuit has long considered that statutory provision to be a broad exemption that shields USPS determinations from the auspices of APA review, *see, e.g.*, *Mittleman*, 757 F.3d at 305 (reemphasizing in the context of analyzing whether judicial review of USPS decisions to close post offices is precluded that "we have observed that the Postal Service is exempt from review under the Administrative Procedure Act" (internal quotation marks and citation omitted)). Plaintiffs' second argument—that the APA should be set aside entirely, and the Court should permit plaintiffs to rely on "traditional forms of *pre-APA* equitable review" (Pls.' Opp'n at 20 (emphasis in original))—ignores the fact that Congress has specifically enacted a statute to provide a catch-all cause of action for plaintiffs who seek to challenge agency decisionmaking where none otherwise exists (*i.e.*, the APA), and where Congress has further acted to preclude even APA review, it is well established that no cause of action

remains, much less some undefined "traditional" equitable remedy, *see Carlin v. McKean*, 823 F.2d 620, 623 (D.C. Cir. 1987) (explaining that, while "the presumption of reviewability was a firmly rooted principle of administrative law even before the APA was enacted[,] . . . courts should [not] continue to indulge a presumption of reviewability under the old administrative law principles when Congress has explicitly exempted an agency from the APA's coverage" (internal citations omitted)). Plaintiffs struggle valiantly to establish that something akin to "non-APA review in equity" exists (Pls.' Opp'n at 22) and can be the basis for their claims against USPS (*see id*. at 22–30), but this assertion finds no support in law or in logic, and the mere suggestion plainly defies the statutory scheme for administrative review that Congress has carefully crafted.

Plaintiffs' third, and final, contention is also easily rejected. Based on inferences drawn from *Leedom v. Kyne*, 358 U.S. 184 (1958), and *Board of Governors of the Fed. Reserve System v. MCorp Financial*, 502 U.S. 32 (1991), Plaintiffs insist that "due process provides forms of review even in the face of statutes that deny review." (Pls.' Opp'n. at 31.) But these precedents do not support that proposition. For one, neither case mentions "due process." Rather, *Kyne* stands for the proposition that even where Congress has statutorily precluded review of agency decisions, a plaintiff may still bring a lawsuit challenging agency actions "in excess of its delegated powers and contrary to a specific prohibition in" a statute. *Kyne*, 358 U.S. at 188. That is to say, *ultra vires* review may still be available. In *MCorp Financial*, the Supreme Court distinguished *Kyne* because the statute in *MCorp Financial* "expressly provide[d] MCorp with a meaningful and adequate opportunity for judicial review[.]" *MCorp*

*Financial*, 502 U.S. at 43.  Plaintiffs concede that *MCorp Financial* thus has no independent "relevance here[,]" but they interpret the two cases together as meaning that even if the APA precludes judicial review of USPS decisions, "review would nonetheless be available under *Kyne* for want of any other forum to review USPS's action."  (Pls.' Opp'n at 31.)  It is true that "central to [the Supreme Court's] decision in *Kyne* was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights[,]" as the Supreme Court explained in *MCorp Financial*.  502 U.S. at 43.  But this does not mean that the Supreme Court opened up any and all agency actions to judicial review; rather, as stated above, the Court recognized that *ultra vires* review of agency action may be available in certain situations, even if Congress otherwise intended to preclude judicial review.

The bottom line is this: nothing that Plaintiffs assert in the context of their opposition to Defendants' motion to dismiss Counts I and II persuasively demonstrates that either the APA or some other form of pre-APA equitable relief is available as a cause of action for the claims that Plaintiffs bring here.  Furthermore, Plaintiffs have done nothing to support their corollary contention that this Court can review these claims because the USPS has acted "*ultra vires*" with respect to its resolution of the mail delivery dispute (*see* Am. Compl. ¶¶ 57, 60; *see also* Pls.' Opp'n at 28), as explained below.

 2.  Plaintiffs Have Not Demonstrated *Ultra Vires* Action On The Part Of USPS

Where APA review is precluded and no other statutory basis for challenging USPS's determination regarding mail delivery exists, the only plausible cause of action

that Plaintiffs could theoretically have against the USPS under the instant circumstances is an *ultra vires* claim—*i.e.*, a claim that USPS acted outside of the authority granted to it by Congress. *See Mittleman*, 757 F.3d at 307. But the complaint at issue here contains *no* allegations of fact that would support a finding that USPS acted *ultra vires*. Indeed, the D.C. Circuit has previously considered the scope of *ultra vires* review as far as USPS decisionmaking is concerned, and has determined that it includes only review of the agency's position regarding "(1) a straightforward question of statutory interpretation; (2) a question concerning whether a regulation in the [Domestic Mail] Manual was a valid exercise of USPS's authority; and (3) a question focusing on whether a Postal Service decision was supported by the agency's contemporaneous justification or, instead, reflected counsel's *post hoc* rationalization." *Sears, Roebuck & Co. v. USPS*, 844 F.3d 260, 265 (D.C. Cir. 2016) (internal quotation marks and citations omitted). None of the allegations contained in Plaintiffs' amended complaint involves any of these issues, and in no other way do Plaintiffs identify a grant of statutory authority that USPS's actions exceeded. (*See generally*, Am. Compl.)

Plaintiffs instead appear to assert that USPS used flawed reasoning in coming to its decision regarding the mail delivery dispute at issue here and, by doing so, acted *ultra vires*. (*See id.* ¶¶ 53–56; 59; Pls.' Opp'n at 30.) But this patently misunderstands the nature of valid *ultra vires* claims. *See Adamski v. McHugh*, 304 F. Supp. 3d 227, 237 (D.D.C. 2015) ("[An] *ultra vires* claim derives from the contention that the agency has acted without the *authority* to do so, and it is based on the inherent power of the federal courts 'to reestablish the limits on [executive] authority' through judicial review." (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)) (second

alteration in original) (emphasis added)); *see also Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 492 (D.C. Cir. 1988) ("Even where Congress is understood generally to have precluded review, the Supreme Court has found an implicit but narrow exception, closely paralleling the historic origins of judicial review for agency actions in excess of jurisdiction."). Stated simply, a claim that an agency acted *ultra vires* is a claim that the agency acted "in excess of its delegated powers and contrary to a specific prohibition in [an] Act[,]" *Kyne*, 358 U.S. at 188, not that an agency's authorized action was imprudent or that, in validly exercising its judgment, the agency reached the wrong result.

Here, Congress has plainly authorized USPS to resolve disputes between parties regarding mail delivery. *See* 39 U.S.C. § 401 (establishing that the "General powers of USPS" include the power "to adopt, amend, and repeal such rules and regulations . . . as may be necessary in the execution of its functions . . . [and] to have all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers"); *see also* 39 U.S.C. § 204 (creating the "Judicial Officer" position, which "shall perform such quasi-judicial duties . . . as the Postmaster General may designate"). And, notably, Plaintiffs' amended complaint does not contend otherwise. Moreover, Plaintiffs have failed to point to any federal statute that dictates the reasoning that USPS must use in mail-dispute proceedings. In fact, as explained above, Congress has expressly exempted those USPS decisions that are issued in the context of mail-dispute proceedings from judicial review under the APA, *i.e.*, from review of whether the decisions are reasonable. *See* 39 U.S.C. § 410(a); *see also Mittleman*, 757 F.3d at 305. Thus, it is clear to this Court that Plaintiffs' contention

that USPS's alleged lack of reasoned decisionmaking constituted *ultra vires* action on the part of the agency is not a plausible claim.[6]

### 3. Plaintiffs Have Not Identified A Statute Or Regulation That Authorizes Federal Courts To Require USPS To Adhere To Its Own Regulations

In Count III of the complaint, Plaintiffs pivot from the 'lack of reasoned decisionmaking' contention and attempt to challenge USPS's alleged "failure to follow [USPS's] prohibition on splitting mail addressed to post office boxes[.]" (Am. Compl. at 15.) However, just as with the claims in Counts I and II, Plaintiffs have not identified a source of law that authorizes the Court to review any such agency violation and grant the relief Plaintiffs seek here. In other words, Plaintiffs have not pointed to any cause of action that authorizes the Court to force USPS to follow its own rules.

To be sure, Congress has authorized USPS to *issue* regulations. *See* 39 U.S.C. § 401(2). And USPS has, pursuant to that authority, promulgated various regulations governing its own actions, including, for example, Postal Operations Manual § 841.751—the regulation that Plaintiffs contend USPS "fail[ed] to follow[.]" (Am. Compl. ¶ 66); *see also* 39 C.F.R. § 211.2(a)(2) (identifying "the Postal Operations Manual" as one of "[t]he regulations of the Postal Service"). But even if the Court takes as true Plaintiffs' contention that USPS failed to follow its own directives, Plaintiffs have identified no source of law that would allow this Court to require USPS

---

[6] In their opposition brief, Plaintiffs assert that, "because USPS's position would violate [various] constitutional provisions, the claims that Plaintiffs raise indeed are 'ultra vires' claims in the manner that USPS uses that term[.]" (Pls.' Opp'n at 28; *see also id.* (maintaining that USPS has acted *ultra vires* because, "[e]ven if USPS followed the laws of Congress as USPS understands those laws, that would not insulate USPS from review based on the unconstitutionality of USPS's interpretation of those laws")). Such a confused 'hail Mary' contention does not warrant a prolonged response. Simply put, a plausible *ultra vires* claim pertains *solely* to the assertion that an agency has transgressed the will of Congress, not that its actions constitute a constitutional violation.

to go back and conform its actions to the rules that govern the agency's conduct.

This is not to say that an agency is free to disregard its own regulations. *Cf. Friedler v. GSA*, 271 F. Supp. 3d 40, 61 (D.D.C. 2017) (calling it "clear beyond cavil that 'an agency is bound by its own regulations'") (quoting *Nat'l Envt. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)). Indeed, in the ordinary case, *the APA* would provide the legal vehicle for a plaintiff to contend that an agency has violated applicable regulations, and the Court would be authorized to vacate any agency action that transgresses the agency's own prescriptions pursuant to that statute. *See* 5 U.S.C. § 706(2)(A); *see also Auer v. Robbins*, 519 U.S. 452, 459 (1997); *Policy & Research, LLC v. U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018). But as has by now been stated repeatedly, it is well-settled law that APA review does not apply to USPS determinations. *See Mittleman*, 757 F.3d at 307. And Plaintiffs' failure to point to any cause of action outside the APA that would allow the Court to enjoin USPS to follow its own regulations means that their request for relief based on USPS's alleged failure to abide by its own regulations (Count III) must be dismissed.

**B.     Plaintiffs Have Not Alleged Facts That, If True, Would State A Plausible Claim That USPS Violated Plaintiffs' Fifth Amendment Right To Due Process**

In Count IV of their amended complaint, Plaintiffs contend that "USPS's administrative review provisions violate due process" because they do not "provide for reconsideration, based on after-arising grounds or evidence." (Am. Compl. ¶ 69.) Thus, the amended complaint appears to attempt to make out a claim that USPS violated Plaintiffs' procedural due process rights, in violation of the Fifth Amendment. *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without

due process of law").  Presumably because Plaintiffs seek only declaratory and injunctive relief, and "[t]here is no question that a cause of action may be stated under the procedural due process component of the fifth amendment for equitable relief[,]" *Harper v. Blumenthal*, 478 F. Supp. 176, 187 n.10 (D.D.C. 1979), USPS does not seek dismissal of Plaintiffs' due process claim on the same grounds as their other claims. Instead, USPS argues that "Plaintiffs fail to identify any constitutionally protected interest of which the Postal Service's procedures deprived them" and that the procedures that USPS affords to aggrieved parties—including representation by counsel, the opportunity to present evidence and argument, and the ability to appeal—"more than comply with the Constitution's guarantee of due process."  (Defs.' Mot. at 24–25.)

     To assess the sufficiency of the complaint's Fifth Amendment due process claim on the grounds that Defendants' motion raises, this Court must "apply a familiar two-part inquiry":  it must determine whether the facts alleged, if true, would establish (1) that "plaintiffs were deprived of a protected interest, and, if so," (2) that they failed to "receive[] the process they were due."  *Barkley v. U.S. Marshals Serv. Ex Rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (internal quotation marks and citation omitted).  This task is easily accomplished here, for even if the Court assumes (without deciding) that the allegations of the amended complaint suffice to establish that USPS deprived Plaintiffs of a protected property interest in the disputed mail—which is now being sent to Eagle Forum's new address rather than to the P.O. Box and street address at which ETF and EFE-LDF receive mail—Plaintiffs' amended complaint alleges *no* facts supporting their contention that they did not receive "the process they were due."  *Id.*;

(*see generally* Am. Compl.)  Indeed, it is well established that due process requires that the deprivation of a constitutionally protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case."[7]  *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  Moreover, a plaintiff is not "entitled to perfect procedures or the procedures of his choice." *Bagenstose v. District of Columbia*, 503 F. Supp. 2d 247, 257 (D.D.C. 2007).  Notably, and as relevant here, "procedural due process in an administrative hearing does not always require all of the protections afforded a party in a judicial trial." *Beverly Enters., Inc. v. Herman*, 130 F. Supp. 2d 1, 18 (D.D.C. 2000).

It is clear to this Court that Plaintiffs have come nowhere near to alleging facts that would support a plausible claim that USPS violated their procedural due process rights.  First, the amended complaint contains no facts to support Plaintiffs' claim that USPS actually refused to provide for reconsideration of the JO's decision based on after-arising grounds or evidence, or otherwise.  (*See generally* Am. Compl.; *see also* Defs.' Mot. at 24 (claiming that Plaintiffs "have never *asked* the Judicial Officer for reconsideration" (emphasis altered)).)  One would expect a plaintiff who seeks to challenge an agency's refusal to provide a certain procedure to allege facts that, if proven, would establish the agency's refusal.  And the mere fact that the agency regulations do not specifically afford such a procedure (*see* Am. Compl. at 7) says nothing about whether the agency would have accommodated such a request under the circumstances presented here.  *See Reno v. Flores*, 507 U.S. 292, 301 (1993) (explaining that "[t]o prevail in such a facial challenge, respondents 'must establish that

---

[7] Plaintiffs do not claim that they received inadequate notice.  (*See* Am. Compl ¶¶ 68–71.)

no set of circumstances exists under which the [regulation] would be valid'" (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (second alteration in original)). This Court will not assume that USPS would never allow for reconsideration simply because its regulations do not say otherwise. *Cf. id.* at 309 (refusing to "assume, on this facial challenge, that an excessive delay will invariably ensue" where "there is no evidence of such delay" and where "[r]espondents point out that the regulations do not set a time period within which the immigration-judge hearing, if requested, must be held").

Even if it sufficed for Plaintiffs to point to the absence of a reconsideration provision in the agency's regulations, it is clear that the Due Process Clause does not mandate any such process. Plaintiffs have not cited any case that states that the failure of an agency to provide for reconsideration after appeal is a due process violation. Moreover, in similar cases, courts have easily found the due process requirements of the Constitution to be satisfied where various procedures short of reconsideration are afforded to the parties as part of an administrative review process. *See, e.g.*, *Barkley*, 766 F.3d at 32–33 (finding due process requirements met where officer "terminated for reasons of medical fitness" was first "given the opportunity to supply" evidence to "neutral decisionmakers[,]" even though no oral hearing was held); *Beverly Enters.*, 130 F. Supp. 2d at 19 (finding due process requirements met in administrative proceedings where "the plaintiff employed counsel, took depositions from and cross examined" witnesses, and "reviewed all documents considered by the agency in its decision and presented its own exhibits and witnesses to prove its case"); *id.* (citing case in which "the court held that an administrative hearing meets the main requirements of due

process where a party had the right to a neutral arbitrator, to be represented by counsel, to conduct cross-examination, present evidence and witnesses on its own behalf and rebut evidence submitted by the adverse party").

In short, Plaintiffs' claim that USPS violated their constitutional right to due process clearly cannot survive USPS's motion to dismiss when Plaintiffs offer no facts to suggest that the requested procedure was ever denied, and even so, merely claim, without more, that due process requires that USPS "provide for reconsideration." (Am. Compl. ¶ 69.)

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs have failed to identify a cause of action that would authorize this Court to grant the relief they seek as to three of the counts in their amended complaint, and have also failed to allege facts that support a claim that Defendants violated their constitutional right to due process.  Thus, Plaintiffs' amended complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Accordingly, and as set forth in the accompanying Order, Defendant's motion to dismiss is **GRANTED**, and Plaintiffs' action is **DISMISSED**.


DATE:  February 4, 2019              *Ketanji Brown Jackson*
                                     KETANJI BROWN JACKSON
                                     United States District Judge